RAMSEY COULTER,

          Plaintiff,

          v.

PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY, *doing business as* FEDLOAN SERVICING,

          Defendant.

No. 5:17-cv-03689

# O P I N I O N

**Defendant's Partial Motion to Dismiss, ECF No. 4 – Granted in part**

**Joseph F. Leeson, Jr.**                                                                     **May 15, 2018**
**United States District Judge**

## I. Introduction

Plaintiff Ramsey Coulter alleges that Defendant Pennsylvania Higher Education Assistance Agency ("PHEAA") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681–1681x, by providing inaccurate information to credit bureaus, failing to conduct a reasonable investigation after being notified that its information was in dispute, and failing to correct the inaccurate information. PHEAA has filed a partial Motion to Dismiss, contending that several of Coulter's allegations fail to state a claim under the FCRA. For the reasons set forth below, PHEAA's Motion is granted in part.

## II. Background

Coulter's Complaint alleges the following facts.

On April 2015, Coulter filed for Chapter 7 bankruptcy. Compl. ¶ 6. Coulter's eligible debts were subsequently discharged in September 2015, but his student loan debts were not

discharged because they were not eligible. Compl. ¶ 7. In total, Coulter had seven student loan "trade lines" that were being reported by PHEAA to the Trans Union, Equifax, and Experian credit bureaus. Compl. ¶ 8. Prior to Coulter's bankruptcy, he had continuously paid his student loan accounts on time. Compl. ¶ 9.

In November 2015, each credit bureau listed Coulter's student loans as running a $0 balance, with a comment listing the accounts as discharged in bankruptcy. Compl. ¶ 10. In fact, Coulter's student loans were never discharged, nor had he filed for an "adversarial hearing" in order to seek such discharge. Compl. ¶ 12.

After reviewing his credit report and seeing that credit bureaus were inaccurately reporting his student loans, Coulter sent a letter to all three credit bureaus disputing the status of these trade lines. Compl. ¶ 13. The credit bureaus forwarded Coulter's disputes to PHEAA. Compl. ¶ 14. In response to the disputes received from the credit bureaus, PHEAA failed to conduct a reasonable investigation into Coulter's dispute and allowed the trade lines to remain inaccurate, significantly impacting Coulter's credit worthiness by misrepresenting Coulter's likelihood to timely pay his bills. Compl. ¶ 16.

On the basis of these allegations, Coulter asserts that PHEAA violated the FCRA when it willfully and negligently: supplied the credit bureaus with information about him that was false, misleading, and inaccurate; failed to conduct an investigation of the inaccurate information that he disputed; failed to list the trade lines as in dispute; failed to report the results of its investigation to the relevant credit bureaus; failed to properly participate, investigate, and comply with the credit bureaus' reinvestigations concerning the inaccurate information disputed by Coulter; and continued to furnish and disseminate inaccurate and derogatory credit information
2
051418

concerning Coulter to the credit bureaus. Compl. ¶¶ 22-30. Coulter seeks the greater of statutory or actual damages, plus punitive damages, along with costs, interest, and attorney's fees.

In response to Coulter's Complaint, PHEAA filed the present partial Motion to Dismiss, contending that several of Coulter's allegations improperly assert claims for which the FCRA provides no private right of action.

### III.    Standard of Review – Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).

### IV.    Analysis

The FCRA, enacted in 1970, "created a regulatory framework governing consumer credit reporting" that "'was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014) (quoting *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010)). Under the FCRA, consumer reporting agencies, or credit bureaus, "collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into

individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Id.*

The FCRA imposes a variety of obligations on furnishers of credit data. First, under 15 U.S.C. § 1681s-2(a), data furnishers must provide complete and accurate information to consumer reporting agencies. Violations of this obligation, however, are not subject to a private cause of action "in the first instance," that is, before the consumer has disputed the information with a credit bureau. *See Seamans*, 744 F.3d at 864. Rather, the FCRA "explicitly precludes private suits" for failure to comply with the duties set forth under 15 U.S.C. § 1681s-2(a), "and instead provides for enforcement of that provision by federal and state officials." *Seamans*, 744 F.3d at 864.

Second, under 15 U.S.C. § 1681s-2(b), the FCRA requires that after receiving notice of a dispute with regard to the completeness or accuracy of any information provided by a furnisher to a credit bureau, the furnisher shall:

> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the consumer reporting agency pursuant to section 1681i(a)(2) of this title;
>
> (C) report the results of the investigation to the consumer reporting agency;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1), for purposes of reporting to a consumer reporting agency only, as appropriate, based on the results of the reinvestigation promptly--
>
>> (i) modify that item of information;
>>
>> (ii) delete that item of information; or
>>
>> (iii) permanently block the reporting of that item of information.

15 U.S.C. § 1681s-2(b)(1). In short, 15 U.S.C. § 1681s-2(b) requires, among other things, the "complete and accurate post-dispute reporting of debts." *Seamans*, 744 F.3d at 866–67. Unlike a furnisher's obligations under § 1681s-2(a), the obligations under § 1681s-2(b) are enforceable by a private right of action by a consumer. *See id.*

Here, PHEAA does not dispute that Coulter has stated a claim under the FCRA by alleging that PHEAA failed to conduct a reasonable investigation in response to his credit disputes, pursuant to its obligations under § 1681s-2(b). But PHEAA contends that Coulter improperly includes several claims under § 1681s-2(a)—for which there exists no private right of action—and that all such claims must therefore be dismissed. In particular, PHEAA cites paragraphs 23, 25, and 28 of the Complaint, which allege that it willfully and negligently "supplied the credit reporting agencies with information about Plaintiff that was false, misleading, and inaccurate," Compl. ¶ 23, "failed to list the trade line as one in dispute," Compl. ¶ 25, and "continued to furnish and disseminate inaccurate and derogatory credit, account, and other information concerning Plaintiff to credit reporting agencies" after Coulter disputed the information, Compl. ¶ 28. According to PHEAA, all of these claims arise under § 1681s-2(a), under which no private right of action exists.

In response to PHEAA's Motion, Coulter agrees that a consumer cannot bring a claim under § 1681s-2(a) for a furnisher's failure to provide accurate information in the first instance. But, he contends, once a furnisher has received notice of a dispute, the furnisher thereafter has a responsibility not only to conduct an investigation but also to provide accurate information, including information about whether a trade line is in dispute.

As indicated above, § 1681s-2(b) "requires complete and accurate post-dispute reporting of debts" on the part of furnishers, and the FCRA provides a private right of action for

consumers to enforce this obligation. *See Seamans*, 744 F.3d at 866–67. The reporting requirement includes an obligation to report that a claim is disputed. *See id.* at 867. Accordingly, to the extent that Coulter alleges in paragraphs 23, 25, and 28 of the Complaint that PHEAA failed to fulfill its responsibility to provide a "complete and accurate post-dispute reporting of debts," Coulter has properly alleged claims under § 1681s-2(b), and PHEAA's Motion to Dismiss is denied.

On the other hand, paragraphs 23 and 25 of the Complaint, as set forth above, are written in broad terms, and it is not clear that these paragraphs relate only to post-dispute conduct. Accordingly, to the extent that these paragraphs seek to allege violations of the FCRA based on the PHEAA's failure to furnish accurate information "in the first instance," prior to Coulter's dispute, the allegations fail to state a claim, as Coulter himself acknowledges. To this extent, therefore, PHEAA's Motion is granted.

## V. Conclusion

For the reasons set forth above, PHEAA's partial Motion to Dismiss is granted in part and denied in part. A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge